**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IBALDO ARENCIBIA,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 4:20-cv-00819-O** |
| | § | |
| **AGA SERVICE COMPANY d/b/a** | § | |
| **ALLIANZ GLOBAL ASSISTANCE,** | § | |
| **AMERICAN AIRLINES, INC., and** | § | |
| **JEFFERSON INSURANCE COMPANY,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**BRIEF IN SUPPORT OF DEFENDANT AMERICAN AIRLINES, INC.'S
<u>MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................3

LEGAL STANDARD............................................................................................................6

ARGUMENT ........................................................................................................................6

I.     PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED ...............................6

       A.    Dismissal Is Warranted Because No Named Plaintiff Is A Member Of The Subclass Asserting State Law Claims Against American.......................................7

       B.    Plaintiff's State Law Claims Are Preempted By The Airline Deregulation Act.................................................................................................................................7

       C.    Plaintiff's State Law Claims Fail On The Merits ..................................................11

            1.    Plaintiff's Unjust Enrichment Claim Fails To State A Claim Under Texas Law ...............................................................................................11

            2.    Plaintiff Fails To State A DTPA Claim ....................................................12

II.    PLAINTIFF'S RICO CLAIM SHOULD BE DISMISSED ............................................14

       A.    The McCarran-Ferguson Act Bars Plaintiff's RICO Claim ..................................14

       B.    Plaintiff Fails To State A RICO Claim ..................................................................17

             1.    Plaintiff Fails To Adequately Allege A Violation Of 18 U.S.C. § 1962.......................................................................................................17

                   a.    Plaintiff Fails To Adequately Allege That American Engaged In Racketeering Activity ...................................................17

                   b.    Plaintiff Fails To Adequately Allege That American Operated Or Managed A RICO Enterprise ....................................20

             2.    Plaintiff Fails To Adequately Allege A Cognizable Injury .......................22

             3.    Plaintiff Fails To Adequately Allege Causation .........................................22

III.   PLAINTIFF'S DECLARATORY RELIEF CLAIM SHOULD BE DISMISSED ...........24

CONCLUSION......................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aguilar v. United Floor Crew, Inc.*,
2015 WL 2415421 (S.D. Fla. May 21, 2015) ...........................................................................8

*In re Am. Airlines, Inc., Privacy Litig.*,
370 F. Supp. 2d 552 (N.D. Tex. 2005) ................................................................................11

*Am. Airlines, Inc. v. Wolens*,
513 U.S. 219 (1995) ..............................................................................................................9

*Am. Bankers Ins. Co. of Fla. v. Inman*,
436 F.3d 490 (5th Cir. 2006) ..............................................................................................14

*Am. United Life Ins. Co. v. Martinez*,
480 F.3d 1043 (11th Cir. 2007) ..........................................................................................17

*Amirhamzeh v. Wells Fargo Bank, N.A.*,
2014 WL 12610227 (N.D. Cal. Oct. 31, 2014) ...................................................................13

*Bauer v. Tex.*,
341 F.3d 352 (5th Cir. 2003) ..............................................................................................24

*Berger v. Home Depot USA, Inc.*,
741 F.3d 1061 (9th Cir. 2014) ..........................................................................................2, 7

*Bowe v. Pub. Storage*,
106 F. Supp. 3d 1252 (S.D. Fla. 2015) ...............................................................................22

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008) ............................................................................................................22

*C & B Sales & Serv., Inc. v. McDonald*,
95 F.3d 1308 (5th Cir. 1996), *modified in part on other grounds*, 111 F.3d 27
(5th Cir. 1997) .....................................................................................................................17

*Chair King, Inc. v. Houston Cellular Corp.*,
1995 WL 1760037 (S.D. Tex. Nov. 3, 1995) .....................................................................14

*Chris Albritton Const. Co. v. Pitney Bowes Inc.*,
304 F.3d 527 (5th Cir. 2002) ..............................................................................................17

*Cisneros v. Petland, Inc.*,
341 F. Supp. 3d 1365 (N.D. Ga. 2018), *aff'd in relevant part*, 972 F.3d 1204
(11th Cir. 2020) ...................................................................................................................20

*Clapper v. Am. Realty Inv'rs, Inc.*,
    2019 WL 5865709 (N.D. Tex. Nov. 7, 2019) ....................................................6, 11

*Cody v. Cmty. Loan Corp. of Richmond Cty.*,
    606 F.2d 499 (5th Cir. 1979) ...................................................................14

*Cruz v. Andrews Restoration*, Inc.,
    364 S.W.3d 817 (Tex. 2012)...................................................................12

*David v. United Cont'l Holdings, Inc.*,
    2015 WL 7573204 (D.N.J. Nov. 24, 2015) .............................................10

*Davis-Lynch, Inc. v. Moreno*,
    667 F.3d 539 (5th Cir. 2012) ............................................................20, 21

*Dig. Drilling Data Sys., L.L.C. v. Petrolink Servs.*,
    965 F.3d 365 (5th Cir. 2020) ...................................................................11

*Donoff v. Delta Air Lines, Inc.*,
    2020 WL 1226975 (S.D. Fla. Mar. 6, 2020)............................................14

*Eller v. EquiTrust Life Ins. Co.*,
    778 F.3d 1089 (9th Cir. 2015) .................................................................17

*Estrada v. Becker*,
    917 F.3d 1298 (11th Cir. 2019) ...............................................................19

*Falk v. Wells Fargo Bank*,
    2011 WL 3702666 (N.D. Tex. Aug. 19, 2011), *aff'd*, 541 F. App'x 481 (5th
    Cir. 2013) ................................................................................................24

*Fernald v. Sw. Airlines Co.*,
    2011 WL 13254382 (S.D. Cal. Sept. 28, 2011)..........................................8

*In re FieldTurf Artificial Turf Mktg. & Sales Practices Litig.*,
    2019 U.S. Dist. LEXIS 175525 (D. N.J. Oct. 8, 2019)..............................7

*Flores v. United Airlines*,
    426 F.Supp.3d 520 (N.D. Ill. 2019) ........................................................16

*Fredericksburg Care Co., L.P. v. Perez*,
    461 S.W.3d 513 (Tex. 2015)....................................................................14

*Galieo Int'l, L.L.C. v. Ryanair, Ltd.*,
    2002 WL 314500 (N.D. Ill. Feb. 27, 2002) ............................................10

*Gen. Tel. Co. v. Falcon*,
    457 U.S. 147 (1982).............................................................................2, 7

*Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*,
    786 F.3d 400 (5th Cir. 2015) .................................................17

*Gordon v. Sig Sauer, Inc.*,
    2019 WL 4572799 (S.D. Tex. Sept. 20, 2019) ......................12

*Green v. Bissell Homecare Inc.*,
    2011 WL 13175163 (N.D. Ala. July 29, 2011), *aff'd*, 476 F. App'x 238 (11th
    Cir. 2012) ...............................................................................21

*Hager v. Vertrue, Inc.*,
    2011 WL 4501046 (D. Mass. Sept. 28, 2011) ...............13, 18

*Harris Cty. Tex. v. MERSCORP Inc.*,
    791 F.3d 545 (5th Cir. 2015) .................................................24

*People ex rel. Harris v. Delta Air Lines, Inc.*,
    202 Cal. Rptr. 3d 395 (Cal. Ct. App. 2016) .........................11

*Hemi Grp., LLC v. City of N.Y.*,
    559 U.S. 1 (2010) ..................................................................22

*Hildebrand v. Dentsply Int'l, Inc.*,
    264 F.R.D. 192 (E.D. Pa. 2010) .............................................7

*Hodges v. Delta Airlines, Inc.*,
    44 F.3d 334 (5th Cir. 1995) (en banc) ....................................9

*Holmes v. Sec. Inv'r Prot. Corp.*,
    503 U.S. 258 (1992)..............................................................22

*Humana Inc. v. Forsyth*,
    525 U.S. 299 (1999)........................................................14, 15

*Huntleigh Corp. v. La. State Bd. of Private Sec. Examiners*,
    906 F. Supp. 357 (M.D. La. 1995).......................................10

*In re Jetblue Airways Corp. Privacy Litig.*,
    379 F. Supp. 2d 299 (E.D.N.Y. 2005) ..................................11

*Joseph v. Richard S. Bernstein & Assocs.*,
    612 F. App'x. 551 (11th Cir. 2015) ......................................16

*Lampkin v. UBS Fin. Servs., Inc.*,
    925 F.3d 727 (5th Cir. 2019) ..................................................6

*Levels v. Merlino*,
    969 F. Supp. 2d 704 (N.D. Tex. 2013) .................................23

iv

*Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*,
    283 F.3d 282 (5th Cir. 2002) ........................................................7, 9, 10

*Machete Prods., L.L.C. v. Page*,
    809 F.3d 281 (5th Cir. 2015) ................................................................24

*In re Mastercard Int'l Inc., Internet Gambling Litig.*,
    132 F. Supp. 2d 468 (E.D. La. 2001) ....................................................20

*Mitchell v. U.S. Airways, Inc.*,
    874 F. Supp. 2d 50 (D. Mass. 2012) .....................................................10

*Morales v. Trans World Airlilnes*,
    504 U.S. 374 (1992).........................................................................9, 10

*Munich Am. Reinsurance Co. v. Crawford*,
    141 F.3d 585 (5th Cir. 1998) ................................................................14

*Northwest, Inc. v. Ginsberg*,
    572 U.S. 273 (2014)..............................................................................7

*O'Neill v. CitiMortgage, Inc.*,
    2014 WL 1199338 (N.D. Tex. Mar. 24, 2014) ......................................24

*Onosamba-Ohindo v. Barr*,
    2020 U.S. Dist. LEXIS 160270 (W.D.N.Y. Sept. 2, 2020) .....................7

*Patterson v. Mobil Oil Corp.*,
    335 F.3d 476 (5th Cir. 2003) ................................................................22

*Prendes v. Select Portfolio Servicing, Inc.*,
    2012 WL 6913511 (N.D. Tex. Dec. 28, 2012) ......................................23

*Price v. Pinnacle Brands, Inc.*,
    138 F.3d 602 (5th Cir. 1998) ..........................................................17, 22

*Ranieri v. AdvoCare Int'l, L.P.*,
    336 F. Supp. 3d 701 (N.D. Tex. 2018) ...............................................4, 21

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993).............................................................................21

*Riverview Health Inst. LLC v. Med. Mut. of Ohio*,
    601 F.3d 505 (6th Cir. 2010) ................................................................16

*Roland v. Transamerica Life Ins. Co.*,
    570 F. Supp. 2d 871 (N.D. Tex. 2008), *aff'd*, 337 F. App'x 389 (5th Cir. 2009)..............18, 19

*Rowe v. N.H. Motor Transp. Ass'n*,
  552 U.S. 364 (2008)................................................................................................7

*Royal Drug Co. v. Grp. Life & Health Ins. Co.*,
  556 F.2d 1375 (5th Cir. 1977), *aff'd*, 440 U.S. 205 (1979)..................................14

*Smith v. Mellon Bank*,
  957 F.2d 856 (11th Cir. 1992) .........................................................................2, 19

*Statland v. Am. Airlines, Inc.*,
  998 F.2d 539 (7th Cir. 1993) ..................................................................................8

*Torres v. S.G.E. Mgmt., L.L.C.*,
  838 F.3d 629 (5th Cir. 2016) (en banc) ...............................................................22

*United Food & Commercial Worker Unions & Emp'rs Midwest Health Benefits*
  *Fund v. Walgreen Co.*,
  719 F.3d 849 (7th Cir. 2013) ...........................................................................20, 21

*United States v. Evans*,
  892 F.3d 692 (5th Cir. 2018) ................................................................................17

*Vernon v. Qwest Commc'ns Int'l, Inc.*,
  925 F. Supp. 2d 1185 (D. Colo. 2013)............................................................13, 18

*Walker v. Beaumont Indep. Sch. Dist.*,
  938 F.3d 724 (5th Cir. 2019) ................................................................................20

*Williams v. Lew*,
  819 F.3d 466 (D.C. Cir. 2016)................................................................................8

*Zamber v. American Airlines, Inc.*,
  WL 3163037 (N.D. Tex. June 11, 2020) ....................................................... *passim*

*Zastrow v. Houston Auto Imports Greenway Ltd.*,
  789 F.3d 553 (5th Cir. 2015) ................................................................................17

*Zucker v. Farish*,
  2018 WL 6570867 (N.D. Tex. Dec. 12, 2018) .....................................................20

## STATUTES

15 U.S.C. § 1012(b) ...............................................................................13

18 U.S.C.
    § 1956..........................................................................................20
    § 1956(c)(7) .................................................................................19
    § 1962.....................................................................................16, 22
    § 1962(c) ......................................................................................17
    § 1964(c) ................................................................................16, 22

49 U.S.C.
    § 40101(a)(6)................................................................................9
    § 40102(a)(39) .............................................................................8
    § 41713(b)(1) ...............................................................................7

Fla. Stat. § 626.9541(1)(a) ...................................................................16

Tex. Bus. & Com. Code
    § 17.50(a) ...................................................................................11
    § 17.50(a)(1)(B) ..........................................................................12

Tex. Ins. Code
    § 541.003....................................................................................14
    § 541.052....................................................................................14
    § 541.151....................................................................................15
    § 4055.151 *et. seq.* ...................................................................15
    § 4055.156..................................................................................15

## RULES

Fed. R. Civ. P. 9(b) ................................................................................6

Fed. R. Civ. Proc. § 12(b)(6) .................................................................1

Fed. R. Evid. 201(b)................................................................................8

## REGULATIONS

44 Fed. Reg. 9948, 9951 (Feb. 15, 1979) ..............................................9

79 Fed. Reg. 23,110, 23,144 (Apr. 25, 2011) .......................................10

## OTHER AUTHORITIES

*Trip Insurance*, Allianz Global Assistance,
    https://www.allianzworldwidepartners.com/usa/terms-and-
    conditions/001004474 (last visited October 15, 2020) ..........................3

U.S. Gov't Accountability Office, No. GAO-17-756, *Commercial Aviation:*
    *Information on Airline Fees for Optional Services* 23 (2017),
    https://www.gao.gov/assets/690/687258.pdf ......................................................................8, 9

Pursuant to Federal Rules of Civil Procedure 12(b)(6), Defendant American Airlines, Inc. ("American") respectfully moves to dismiss with prejudice the claims in the amended putative class action complaint ("Amended Complaint"), ECF No. 82-1, brought by Plaintiff Ibaldo Arencibia ("Plaintiff").

## INTRODUCTION

On August 17, 2019, while booking a flight from Miami to Bogota on American's website, Plaintiff purchased trip insurance from Allianz. Plaintiff admits that (1) Allianz's trip insurance offer warned him that "[t]erms, conditions, and exclusions apply," Declaration of Coverage at 2, AC Ex. C; (2) Allianz provided him with a hyperlink to view those terms; (3) Allianz provided him at the time of purchase with direct access to a detailed 36-page policy that "accurately reflect[ed] the nature, essence, and substance of what it covers;" (4) Allianz emailed him another link to those terms; and (5) the Allianz policy afforded him 10 days after receiving it to review and cancel without charge for any reason. AC ¶¶ 19 n.4, 38-39, 44; AC Exs. C-D. Rather than read the terms of Allianz's offer or the contents of the policy, Plaintiff bought trip insurance without determining what it included. When he decided to cancel his trip weeks later in order to accept a lucrative job opportunity, he was disappointed to learn that his policy did not apply.

Rather than accept responsibility for his failure to read the terms of his own contract, Plaintiff instead blamed Allianz—asserting that his choices were not his own fault, but the product of criminal fraud, deception, and other wrongdoing that misrepresented the (easily knowable) contents of Allianz's insurance policy. But Plaintiff did not stop there. Even though he repeatedly acknowledges his objection is to "Allianz's offer," *e.g.*, AC ¶¶ 19, 25, 28, 35, 46, "Allianz's representations," *id.* ¶¶ 24, 45, "Allianz's disclosure," *id.* ¶¶ 19, 25, and "Allianz's insurance" that "Allianz sells," *id.* ¶¶ 4, 26, he proceeded to sue *American*—whose only alleged role in the

purported scheme was "letting [Allianz] sell 'insurance' on AA's website," and selling airline fares or imposing fees that make trip insurance attractive to its customers. *Id.* ¶¶ 31, 51-53.

Plaintiff's legal claims against American fail for a host of reasons. To begin with, the only state law claims he asserts against American are brought solely on behalf of a "Texas subclass" of "Texas residents" of which Plaintiff indisputably is not a member. Because Plaintiff "is not a member of th[at] subclass[], [Plaintiff] cannot prosecute claims on [its] behalf." *Berger v. Home Depot USA, Inc*., 741 F.3d 1061, 1067 (9th Cir. 2014) (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982)). That alone dooms Plaintiff's claims. Regardless, Plaintiff does not come close to stating a claim for unjust enrichment or a violation of the Texas Deceptive Practices Act, and both claims are preempted by the Airline Deregulation Act in any event.

Plaintiff's RICO claim is likewise meritless. Not only is Plaintiff's claim barred by the McCarran-Ferguson Act, but Plaintiff cannot even show that American (or Allianz) engaged in any deceptive act—let alone satisfy RICO's other requirements. Plaintiff points to no false representation that Allianz's travel insurance policy lacked any terms and conditions. To the contrary, Allianz's offer expressly disclosed what is "common knowledge"—"that *all* insurance contracts contain specific definitions, requirements, and limitations on coverage." *Smith v. Mellon Bank*, 957 F.2d 856, 858 (11th Cir. 1992) (emphasis added); *see* AC ¶ 19 n.4. Allianz offered Plaintiff countless opportunities by hyperlink, email, and via the policy itself to learn of the contents of his policy and cancel it if he so desired. Plaintiff's complaint results from his failure to read his own contract, not from any violations of state or federal law. And his attempt to rope American into this case even though he does not allege it sold his policy, collected money from him for it, or made any representation regarding its contents, is irresponsible and inappropriate.

Plaintiff already has had the opportunity to amend his complaint and did nothing to remedy the fundamental deficiencies of his complaint. His claims against American should now be dismissed with prejudice.

## BACKGROUND

This case involves the same trip insurance relationship between American and Allianz that this Court recently evaluated in *Zamber v. American Airlines, Inc.*, WL 3163037, at *1-3 (N.D. Tex. June 11, 2020). In short, American sells airline tickets to its customers, including via its website. AC ¶¶ 46, 51. Allianz contracts with American for the right to advertise trip insurance on American's website in exchange for compensation. *Id.* ¶¶ 31, 54. During the process for booking flights on American's website, customers are presented with an offer *from Allianz* to purchase travel protection policies (hereafter "trip insurance") from Allianz. *See id.* ¶¶ 2, 18-19, 35. "Allianz's offer of insurance" includes various representations and disclosures regarding the contents of the offer. *Id.* ¶¶ 19, 24-25, 28, 35-36, 47-48.

Plaintiff contends that the "net impression" created by "Allianz's offer and representations" is that the policy included "a broad-range, no fault travel protection insurance package." *Id.* ¶ 35. In fact, however, Allianz's trip insurance offer explained that "Terms, conditions, and exclusions apply. See coverage details." *Id.* ¶ 19 n. 4, 24. The word "details" was formatted in blue text, with an arrow symbol next to it, signaling the availability of a hyperlink to a further webpage where the customer could learn additional details regarding the terms, conditions, and exclusions of the trip insurance policy before deciding whether to purchase. *Id.* ¶ 19 n. 4. Had he clicked on the hyperlink, Plaintiff would have been directed to an Allianz website setting forth additional details regarding the policy terms, including that customers are eligible for "reimbursement for prepaid, non-refundable expenses if you must cancel your trip *due to a covered reason*." *Trip*

*Insurance*, Allianz Global Assistance, https://www.allianzworldwidepartners.com/usa/terms-and-conditions/001004474 (last visited October 15, 2020) (emphasis added).[1]

Plaintiff Ibaldo Arencibia is a Florida resident. AC ¶ 1. In August 2019, Plaintiff purchased a roundtrip ticket on American to fly in October 2019 from Miami to Bogota, Colombia for $491.03. *Id.* ¶¶ 18, 27. During the booking process, Allianz offered to sell trip insurance to Plaintiff. *Id.* ¶¶ 4, 18-20. Plaintiff does not allege that he reviewed the terms, conditions, and exclusions associated with his policy, nor the added information available by hyperlink from Allianz's offer, before deciding whether to purchase insurance. Instead, Plaintiff decided to purchase trip insurance from Allianz because "it seemed like a good option to protect his trip." *Id.* ¶¶ 18-19.[2]

Plaintiff paid Allianz $36.83 for the trip insurance. AC ¶ 37; AC Ex. D. "Allianz knowingly and voluntarily accepted th[at] benefit[] by collecting the payment for premiums" when Plaintiff "purchased travel protection insurance" on American's website. AC ¶ 94. Allianz separately contracted with American to pay American compensation in exchange for "letting [Allianz] sell 'insurance' on AA's website." *Id.* ¶¶ 31, 54.

At the time he purchased trip insurance, Allianz provided Plaintiff with an additional hyperlink to his full "Allianz[] 'insurance policy.'" *Id.* ¶ 44. That hyperlink led to a document that set forth the terms of coverage, including that he would receive reimbursement only if his trip is "canceled or rescheduled for a covered reason." AC Ex. C at 7. All 16 enumerated covered

---

[1] This Court may consider documents "referred to in the plaintiff's complaint" and "incorporated into the complaint by reference." *Ranieri v. AdvoCare Int'l, L.P.*, 336 F. Supp. 3d 701, 712 (N.D. Tex. 2018) (citations omitted).

[2] Plaintiff previously acknowledged that he knew that his trip would not be protected if it was "cancelled because of a simple change of heart about traveling." Original Complaint (ECF 1) ¶ 32. But he claimed he believed it would be covered as long as "there was some reason not to travel." *Id.*

reasons were then identified. *Id.* at 7-9. Allianz also contemporaneously sent Plaintiff an email in which Allianz states in bold letters "You can access your policy document here"—with the word "here" set apart in blue color to indicate a hyperlink. AC ¶ 43; AC Ex. D. In the document's first page, under the heading "OUR PROMISE TO YOU," Allianz explained that it provides "10 days" for a customer to review the policy and cancel it for any reason for a full refund as long as the trip has not started and no claim has been filed. AC Ex. C. This option to cancel within 10 days was identified several more times in both the Declaration of Coverage (at 2) and the Individual Travel Insurance Policy (at 1, 20). Plaintiff did not cancel his policy within 10 days. Even after 10 days, the policy states that if "you cancel your policy, [Allianz] will provide a refund of any unearned premium as long as your trip has not started and you have not filed a claim." *Id.* Plaintiff never requested a refund.

At some point after having purchased trip insurance on August 17, 2019, Plaintiff was offered the opportunity to earn $3,500 by serving as a lighting technician on a 7-day multi-state tour on days overlapping his planned Bogota trip. AC ¶ 20. On September 2, 2019, despite being told by an Allianz agent that coverage was not likely and after allegedly being instructed to submit a claim, Plaintiff cancelled his trip and filed a claim. On September 9, 2019, his claim was denied. Plaintiff was told that his insurance plan "covers only the specific situations, events and losses included in this document," and that "trip cancellation due to being required to work is not included among those reasons." AC Ex. B.

Plaintiff principally claims that Allianz's offer misrepresented the nature and substance of his trip insurance policy. *See, e.g.*, AC ¶¶ 19, 69(a), 79. Plaintiff alleges that American provides "[a]ssistance" to Allianz's scheme by providing access to its "online platform of flight purchases

5

to Allianz," and by setting fares and change and cancellation fees that render trip insurance an attractive proposition for its customers. *Id.* ¶¶ 48, 51-53.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Lampkin v. UBS Fin. Servs., Inc.*, 925 F.3d 727, 733 (5th Cir. 2019) (citation omitted). Plausibility requires more than mere "'legal conclusions' or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements'"—the plaintiff must plead "factual content" that permits "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citations omitted). And when, as here, a plaintiff alleges fraud, the complaint must state "'the circumstances constituting [the alleged] fraud'" with "'particularity.'" *Id.* (quoting Fed. R. Civ. P. 9(b)).

## ARGUMENT

## I.     PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED

Plaintiff brings two state law claims against American on behalf of a "Texas subclass" of "Texas residents who purchased a trip insurance policy from Allianz through AA's website within the applicable limitations period." AC ¶ 66. (emphasis added) But Plaintiff indisputably is a resident of Florida, not Texas. AC ¶ 1. Because there are no named plaintiffs who are members of the subclass asserting state law claims against American, those claims should be dismissed.

Regardless, Plaintiff's state law claims against American are preempted by the Airline Deregulation Act and fail on the merits. Plaintiff's unjust enrichment claim is not viable because "Texas law does not recognize an independent cause of action for unjust enrichment." *Clapper v. Am. Realty Inv'rs, Inc.*, 2019 WL 5865709, at *10 (N.D. Tex. Nov. 7, 2019); *see Zamber*, 2020 WL 3163037, at *11-12 (dismissing unjust enrichment claim because Florida law did not apply). And Plaintiff's claim under the Texas Deceptive Trade Practices Act fails because Plaintiff fails

to plead that American engaged in any deceptive act, let alone that Plaintiff detrimentally relied on such an act. For any or all of those reasons, Plaintiff's state law claims against American fail.

### A. Dismissal Is Warranted Because No Named Plaintiff Is A Member Of The Subclass Asserting State Law Claims Against American

Plaintiff's state law claims against American should be dismissed most obviously because Plaintiff is not a member of the only subclass asserting unjust enrichment and Texas DTPA claims against American. Count II and Count VI of Plaintiff's Amended Complaints assert claims against American on behalf of a Texas subclass of "Texas residents." AC ¶ 66. But Plaintiff admittedly is a Florida resident. *Id.* at ¶ 1. Because Plaintiff "is not a member of th[e Texas] subclass[], [he] cannot prosecute claims on [its] behalf." *Berger*, 741 F.3d at 1067 (citing *Gen. Tel. Co.*, 457 U.S. at 156). Rather, claims brought on behalf of a subclass for which no named plaintiff qualifies should be dismissed. *See, e.g., Onosamba-Ohindo v. Barr,* 2020 U.S. Dist. LEXIS 160270 at *25-26 (W.D.N.Y. Sept. 2, 2020); *Hildebrand v. Dentsply Int'l, Inc.*, 264 F.R.D. 192, 201-02 (E.D. Pa. 2010); *In re FieldTurf Artificial Turf Mktg. & Sales Practices Litig.*, 2019 U.S. Dist. LEXIS 175525, at *8 (D. N.J. Oct. 8. 2019). For that reason alone, Plaintiff's state law claims against American fail.

### B. Plaintiff's State Law Claims Are Preempted By The Airline Deregulation Act

Plaintiff's state law claims also are preempted by the Airline Deregulation Act ("ADA"), which bars the "enact[ment] or enforce[ment]" of any state "law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). This "broadly" worded preemption provision is given an "expansive" scope, *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.,* 283 F.3d 282, 286 (5th Cir. 2002) (citations omitted), reaching any state law "claim [that] has 'a connection with, or reference to, airline' prices, routes, or services," *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 284 (2014) (citation omitted). State law

claims are preempted "even if [their] effect on [prices], routes, or services 'is only indirect.'" *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008) (citation omitted). Here, Plaintiff's claims are preempted as they are related to both prices and services.

*First*, Plaintiff's claims are related to "price." The ADA defines "price" to mean any "rate, fare, or charge." 49 U.S.C. § 40102(a)(39). The term "price" is "broader than the amount charged for the airline ticket itself" and includes "claims involving fees, taxes, and other charges collected by airlines," *Fernald v. Sw. Airlines Co.*, 2011 WL 13254382, at *2 (S.D. Cal. Sept. 28, 2011), such as trip cancellation charges, *Statland v. Am. Airlines, Inc.*, 998 F.2d 539, 542 (7th Cir. 1993).

Plaintiff's claims are premised on complaints about both airline fares and fees. Plaintiff alleges, for instance, that American plays a "vital role" in Allianz's scheme by selling both refundable and non-refundable tickets and pricing the former at "prohibitively expensive" rates. AC ¶¶ 47, 51. Plaintiff claims that this drives reliance on trip insurance—the "only option to protect purchased flights when [consumers] are uncertain about travel but, at the same time, cannot afford … a 'refundable' ticket." *Id.* ¶ 51. Plaintiff makes the same claim about American's change and cancellation fees, claiming those fees motivate customers to opt for travel insurance. *Id.* ¶ 52.

Claims asserting state law violations premised on how an airline prices its fares or sets fees, however, are plainly preempted by the ADA. Indeed, Plaintiff's complaint underscores, more generally, why state law claims seeking to interfere with an airline's ability to make trip insurance available to its customers have a close connection with or reference to airline fares. One of the most valuable optional services a passenger can purchase during the ticketing process is the right to change or cancel the ticket should the need arise. U.S. Gov't Accountability Office, No. GAO-17-756, *Commercial Aviation: Information on Airline Fees for Optional Services* 23 (2017),

https://www.gao.gov/assets/690/687258.pdf ("GAO Report").[3]  Thus, refundable tickets are more expensive than non-refundable tickets.  This spectrum of fares allows American to keep base fares lower and permits passengers to purchase fares with the fare rules that include change and cancellation fees and policies that match their needs.  *Id.* at 19.

As Plaintiff admits, the availability of trip insurance renders non-refundable fares more attractive to certain customers who cannot afford refundable fares but wish to reduce the financial risk of cancellation for covered reasons.  AC ¶¶ 51-53.  Interference with an airline's ability to make such products available on its website thus interferes with airline pricing and the ADA's goal to promote "maximum reliance on competitive market forces," rather than state regulation, vis a vis the airline industry.  49 U.S.C. § 40101(a)(6).  Because Plaintiff's claims seek to regulate "the selection and design of marketing mechanisms" related to both ticket prices and cancellation fees, his claims have a strong connection with airline fares and charges and are preempted.  *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995); *see Morales v. Trans World Airlilnes*, 504 U.S. 374, 388-89 (1992).

*Second*, Plaintiff's state law claims also relate to "services," a "broad[]" term that reaches all "bargained-for . . . [e]lements" of the air carrier's operations.  *Lyn-Lea Travel*, 283 F.3d at 289 n.11 (quoting *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en banc)).  This encompasses not only the actual "transportation itself" but all "economic factors" within the bargain for that transportation, such as "flight frequency and timing, liability limits, reservation and boarding practices, *insurance*, smoking rules, meal service, entertainment, bonding and corporate financing."  *Id.* (emphasis added) (quoting *Hodges*, 44 F.3d at 336-37).

---

[3] "The Court may take judicial notice of the GAO Report."  *Williams v. Lew*, 819 F.3d 466, 473 (D.C. Cir. 2016) (citing Fed. R. Evid. 201(b)); *see, e.g.*, *Aguilar v. United Floor Crew, Inc.*, 2015 WL 2415421, at *6 & nn.2-3 (S.D. Fla. May 21, 2015).

Under this broad standard, Plaintiff's claims are preempted. Shortly after the ADA was enacted, the Civil Aeronautics Board specifically identified "insurance" as one of the preempted ancillary services. 44 Fed. Reg. 9948, 9951 (Feb. 15, 1979). The Department of Transportation also considers "travel insurance" as an "optional service" in the same vein as "seat selection, seat upgrades, [and] pre-boarding," 79 Fed. Reg. 23,110, 23,144 (Apr. 25, 2011), and this regulatory guidance provides strong support for "the conclusion that the ADA preempts [Plaintiff's] claims," *Lyn-Lea Travel*, 283 F.3d at 288. That is true, moreover, regardless of the fact that the trip insurance here is offered by a third-party—Allianz—rather than American. *See, e.g.*, *David v. United Cont'l Holdings, Inc.*, 2015 WL 7573204, at *3 (D.N.J. Nov. 24, 2015) (applying ADA preemption to claims regarding third-party flight entertainment services); *Mitchell v. U.S. Airways, Inc.*, 874 F. Supp. 2d 50, 52, 55 (D. Mass. 2012) (same for third-party skycap services); *Galieo Int'l, L.L.C. v. Ryanair, Ltd.*, 2002 WL 314500, at *5 (N.D. Ill. Feb. 27, 2002) (same for third-party reservation system services); *Huntleigh Corp. v. La. State Bd. of Private Sec. Examiners*, 906 F. Supp. 357, 362 (M.D. La. 1995) (same for third-party security screening services).

Trip insurance is also closely "connect[ed] with"—and expressly "refer[s] to"—several well-recognized "[e]lements" of air travel that American *itself* provides. *Lyn-Lea Travel*, 283 F.3d 282, 286, 289 n.11 (citations omitted). In particular, the policies insure against disruption to undisputed airline services by providing protection for "[l]ost, damaged or stolen baggage," "[d]elayed baggage," "[t]rip interruption," and "[t]rip cancellation." AC Ex. C at X. Claims about trip insurance thus fall well within the broad "sweep of the 'relating to' language" and are therefore preempted. *Morales*, 504 U.S. at 386.

Finally, by challenging the content of the booking path on American's website, Plaintiff's claims have a "forbidden significant effect" on the manner in which *American* markets *its* services

to consumers.  *Id.* at 388.  Indeed, courts have found that the ADA preempts claims that would affect the content of an airline's "website" because they impermissibly "regulate the manner in which [the airline] communicates with its customers in connection with reservations and ticket sales, both of which are services provided by the airline to its customers."  *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 304, 315 (E.D.N.Y. 2005); *see In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 556, 564 (N.D. Tex. 2005) (same); *People ex rel. Harris v. Delta Air Lines, Inc.*, 202 Cal. Rptr. 3d 395, 408-12 (Cal. Ct. App. 2016) (same for the "Fly Delta mobile application").  Here, Plaintiff's claim is particularly intrusive—it interferes with the content of the very booking path by which consumers shop for American's fares and services and purports to subject American to a patchwork of state insurance regulations.  For all those reasons, the ADA preempts Plaintiff's state law claims.

### C.     Plaintiff's State Law Claims Fail On The Merits

#### 1.     Plaintiff's Unjust Enrichment Claim Fails To State A Claim Under Texas Law

"Texas law does not recognize an independent cause of action for unjust enrichment." *Clapper v. Am. Realty Inv'rs, Inc.*, 2019 WL 5865709, at *10 (N.D. Tex. Nov. 7, 2019); *see Zamber*, 2020 WL 3163037, at *11-12 (dismissing unjust enrichment claim because Florida law did not apply).  Even if Plaintiff could be construed to seek recovery under some other cause of action under an unjust enrichment theory, the Fifth Circuit has made clear that a party seeking to recover under such a theory must "prove[] that [the opposing party] obtained a benefit . . . by fraud, duress, or the taking of an undue advantage."  *Dig. Drilling Data Sys., L.L.C. v. Petrolink Servs.*, 965 F.3d 365, 379 n.11 (5th Cir. 2020).  Plaintiff does not allege anything like that here.[4]

---

[4] Plaintiff does not seriously allege any action *by American* that amounts to fraud or duress.  And the taking of an undue advantage under Texas law requires actions like taking advantage of a

### 2.      Plaintiff Fails To State A DTPA Claim

To prove a claim under the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code § 17.50(a), Plaintiff must establish (1) that he is a "consumer"; (2) that American "engaged in a false, misleading, or deceptive act" as defined by § 17.46; (3) that he "relied to his detriment on the deceptive act"; (4) that he suffered "actual damages"; and (5) that American's conduct "was the producing cause" of those damages. *Cruz v. Andrews Restoration*, Inc., 364 S.W.3d 817, 823-24 (Tex. 2012). The Texas DTPA also requires the plaintiff to prove, as a separate element, "detrimental reliance." *Gordon v. Sig Sauer, Inc.*, 2019 WL 4572799, at *21 (S.D. Tex. Sept. 20, 2019); see Tex. Bus. & Com. Code § 17.50(a)(1)(B). Plaintiff does not come close to pleading most of these elements, let alone all of them.

Most obviously, Plaintiff does not seriously allege that *American*, as distinguished from Allianz, committed a deceptive act. Plaintiff admits time and again that his real complaint is with "Allianz's offer," *e.g.*, AC ¶¶ 19, 25, 28, 35, 46, "Allianz's representations," *id.* ¶¶ 24, 45, "Allianz's disclosure," *id.* ¶¶ 19, 25, and "Allianz's insurance," *id.* ¶ 26, that Allianz sells," *id.* ¶ 4. None of those complaints state a claim against American.

Plaintiff instead charges that American failed to disclose that Allianz's trip insurance offer was limited by terms and conditions, failed to disclose "that it was not the source of the trip protection product," and failed to indicate whether it sponsored or approved of Allianz's product. *See* AC ¶¶ 126-28. But Plaintiff ultimately concedes that Allianz's offer *did* expressly state that

---

position of trust, or a party's failure to pay for goods and services. *See Dig. Drilling Data Sys., L.L.C.,* 965 F.3d at 382-83. Plaintiff alleges nothing like that here.

terms, conditions, and exclusions apply and did disclose that the trip insurance is purchased from a third party—not American. AC ¶¶ 19 n.4, 49; *see also* AC Ex. C (policy).[5]

As to the rest, Plaintiff provides no explanation for how American's purported failure to indicate whether it sponsored or approved of Allianz's product was a "false, misleading, or deceptive" act. Nor does Plaintiff plausibly allege that those supposed deceptive acts induced any reliance or caused him any harm. Rather, Plaintiff's complaint alleges that he bought travel insurance "because it seemed like a good option to protect his trip" and because he believed that if he purchased the insurance policy, he "would not be responsible for any cancellation fees and would be reimbursed the price of his flight." AC ¶ 19. Because Plaintiff fails to allege that he detrimentally relied on any of American's supposedly deceptive acts, nor that they caused him any harm, Plaintiff fails to plead a DTPA claim against American.

Plaintiff cannot even show that Allianz engaged in a deceptive act. Plaintiff had countless opportunities to confirm that his insurance policy did not allow for unconditional recovery. The offer said it; the hyperlink from the offer said it; the policy said it; the email receipt said it; and common sense should have told him it. Plaintiff admits he received the full policy after making the payment, which expressly allowed him to cancel the policy within 10 days for any reason. *Id.* ¶ 44; AC Ex. C at 2. These notices doom Plaintiff's claims of deception. *See Hager*, 2011 WL 4501046, at *7; *Vernon,* 925 F. Supp. 2d at 1191; *Amirhamzeh v. Wells Fargo Bank, N.A.,* 2014 WL 12610227, at *1 (N.D. Cal. Oct. 31, 2014). As such, Plaintiff could not even state a DTPA claim against *Allianz*, let alone American.

---

[5] Plaintiff's description of Allianz's offer box, *see* AC ¶ 19 n.4 is misleadingly incomplete. This Court recently considered reviewed a complete version of Allianz's offer box in *Zamber v. American Airlines*. *See, e.g.*, AA's Br. iso Mot. for SJ (ECF 526) at 6. As that complete version makes clear, Allianz notified consumers that the insurance was offered by a third party, not American.

## II.     PLAINTIFF'S RICO CLAIM SHOULD BE DISMISSED

### A.     The McCarran-Ferguson Act Bars Plaintiff's RICO Claim

The McCarran-Ferguson Act ("MFA"), 15 U.S.C. § 1012(b), provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance."  The MFA bars the application of federal law when "(1) the federal statute does not specifically relate to the 'business of insurance;' (2) the state law was enacted for the 'purpose of regulating the business of insurance;' and (3) the federal statute operates to 'invalidate, impair, or supersede' the state law."  *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 493 (5th Cir. 2006) (citation omitted).  Each of those elements is satisfied here.

*First*, "RICO is not a law that 'specifically relates to the business of insurance.'"  *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999).  *Second*, Plaintiff's claims implicate state laws enacted for the purpose of regulating the business of insurance.  "The category of [state] laws enacted 'for the purpose of regulating the business of insurance' is broad and consists of those laws 'that possess the "end, intention, or aim" of adjusting, managing, or controlling the business of insurance.'"  *Munich Am. Reinsurance Co. v. Crawford*, 141 F.3d 585, 590 (5th Cir. 1998) (citation omitted).  This includes state laws regulating "the selling and advertising of policies." *Fredericksburg Care Co., L.P. v. Perez*, 461 S.W.3d 513, 522 (Tex. 2015); *see also Cody v. Cmty. Loan Corp. of Richmond Cty.*, 606 F.2d 499, 502 (5th Cir. 1979) ("The sale of an insurance policy is undoubtedly the 'business of insurance' for McCarran Act purposes."); *Donoff v. Delta Air Lines, Inc.*, 2020 WL 1226975 at *8 (S.D. Fla. Mar. 6, 2020) ("claims about . . . statements or advertising about insurance that are untrue, deceptive or misleading all fall within the regulatory authority of the [state insurance regulators]").

Here, Plaintiff's RICO claim alleges that Defendants deceptively marketed trip insurance by misrepresenting "the nature, content and substance" of the insurance policy. AC ¶ 110; *see also id.* ¶¶ 108, 111(1), 114, 116. That alleged conduct, however, is directly governed by the Texas Insurance Code, which "vigorously" and comprehensively "regulates the insurance industry." *Chair King, Inc. v. Houston Cellular Corp.*, 1995 WL 1760037, at *4 (S.D. Tex. Nov. 3, 1995) (quoting *Royal Drug Co. v. Grp. Life & Health Ins. Co.*, 556 F.2d 1375, 1385 (5th Cir. 1977), *aff'd*, 440 U.S. 205 (1979)); *see* Tex. Ins. Code §§ 541.003, 541.052 (prohibiting "unfair or deceptive act[s] or practice[s] in the business of insurance," including claims of "untrue, deceptive, or misleading" advertising). Similarly, the Texas Insurance Code directly regulates the duties and privileges of a travel retailer, like American, with respect to the marketing of trip insurance. *See* Tex. Ins. Code § 4055.151 *et. seq.*; *see also* Tex. Ins. Code § 4055.156 (setting forth duties of travel retailers).

*Third*, allowing these claims to be brought under RICO would impair those state-law provisions. The "impairment" element under the MFA is satisfied when the federal law "directly conflict[s] with state regulation" or when "application of the federal law" would "frustrate any declared state policy or interfere with a State's administrative regime." *Humana*, 525 U.S. at 310. That standard is met here.

To begin with, Plaintiff's RICO claim would interfere with Texas's detailed travel insurance regime, which specifically sets forth the rights and duties of travel retailers like American with respect to the marketing of travel insurance. For instance, while Plaintiff seeks to hold American liable under RICO for supposedly failing to expose the "content and substance" of Allianz's trip insurance policy, AC ¶¶ 113-14, Texas *restricts* travel retailers from evaluating or interpreting the benefits provided under the terms of an insurance policy, Tex. Ins. Code §

4055.156. Plaintiff's suit also conflicts with the procedural requirements of Texas's Insurance Code, which require a party to provide pre-suit notice to both the defendant and the state regulatory agency before bringing a putative class action for violations of the above provisions. *See* Tex. Ins. Code § 541.151. Here, however, Plaintiff did neither. Permitting him to ignore those requirements would thus interfere with the reticulated regime enacted by the Texas Legislature.

Plaintiff's claim would also interfere more broadly with Texas insurance regulations by appropriating to federal law questions that are meant to be resolved by Texas insurance regulations, including questions about whether practices comport with state insurance laws regulating unfair or deceptive advertising. For that very reason, in a decision that this Court found "persuasive," *see Zamber v. Am. Airlines, Inc.*, 2020 WL 3163037, at *11, the Northern District of Illinois found that the MFA barred a RICO claim predicated on supposedly unfair and deceptive practices concerning the marketing and sale of Allianz's trip insurance via an offer box on another airline's website. *See Flores v. United Airlines*, 426 F.Supp.3d 520, 538 (N.D. Ill. 2019). The same result follows here.[6]

---

[6] In moving to amend his complaint, Plaintiff acknowledged that "[i]mplicit in the transfer of this case from Florida to Texas was a determination that Plaintiff's claims against AA were controlled by Texas law." Mot. for Leave to File Am. Compl. (ECF 82) at 1. Even if Florida law supplied the relevant state law comparison, however, the same result would follow. Plaintiff's claims plainly implicate Florida statutes enacted for the purpose of regulating the business of insurance. *See, e.g.*, Fla. Stat. § 626.9541(1)(a) (regulating "[k]nowingly making, issuing, circulating, or causing to be made, issued, or circulated, any . . . statement, sales presentation, [or] omission . . . , which . . . [m]isrepresents the benefits, advantages, conditions, or terms of any insurance policy" (emphasis added)). Among other considerations, Florida expressly chose not to afford a private right of action for alleged violations of that provision. *See Joseph v. Richard S. Bernstein & Assocs.*, 612 F. App'x. 551, 557 (11th Cir. 2015). Where "the state insurance scheme does not allow a private right of action for the conduct alleged," it is self-evident that "the McCarran-Ferguson Act bars the application of RICO." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 518 (6th Cir. 2010); *see also* American's Mot. to Dismiss at 5-7 (ECF 29) (addressing RICO claim's interference with Florida law).

**B.**     **Plaintiff Fails To State A RICO Claim**

In addition to being barred by the MFA, Plaintiff fails to state a claim under RICO.  Most obviously, Plaintiff points to no actual misrepresentation; Plaintiff simply failed to read the readily available terms of his trip insurance policy both before and after purchasing it.  Rather than accept responsibility for that, he alleges that he was the victim of fraud by a criminal enterprise.  That is nonsense.  To prevail on a civil RICO claim under 18 U.S.C. § 1964(c), the plaintiff must prove (1) "a violation of [18 U.S.C. § 1962]"; (2) "injury" to "business or property"; and (3) "causation." *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998).[7]  Plaintiff fails to adequately allege *any* of these elements, let alone all of them.

**1.**     **Plaintiff Fails To Adequately Allege A Violation Of 18 U.S.C. § 1962**

To establish a § 1962(c) violation, Plaintiff must prove that American (1) "engage[d] in" (2) "a pattern of racketeering activity" (3) "connected to the acquisition, establishment, conduct, or control of an enterprise." *Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 559 (5th Cir. 2015).  The complaint fails to plausibly allege these elements.

**a.**     **Plaintiff Fails To Adequately Allege That American Engaged In Racketeering Activity**

Plaintiff first fails to plead that American engaged in predicate acts of racketeering.  While he alleges that American committed mail and wire fraud, as well as money laundering, AC ¶ 111, neither theory is remotely viable.

*Fraud.*  For "mail fraud and wire fraud [to serve] as predicate acts," Plaintiff must allege that American (1) participated in a "scheme or artifice to defraud" involving the mails or wires,

---

[7] Although some cases refer to "injury" and "causation" as elements of "RICO standing," *Price*, 138 F.3d at 606, American heeds the Fifth Circuit's instruction to "avoid using that term," *Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 409 n.8 (5th Cir. 2015).

and (2) harbored an "intent to defraud." *Chris Albritton Const. Co. v. Pitney Bowes Inc.*, 304 F.3d 527, 532 (5th Cir. 2002) (emphasis omitted). A scheme to defraud requires sufficient allegations of "false or fraudulent pretenses, representations or promises," *Chris Albritton*, 304 F.3d at 532, that are "material," *United States v. Evans*, 892 F.3d 692, 712 (5th Cir. 2018).[8]

Plaintiff fails to plead any actionable misrepresentations. Plaintiff principally alleges that when "the enterprise makes (or permits partners to make)" statements like "Yes, protect my trip" and "Includes trip cancellation, trip interruption, … and more," it portrays that the product being sold offers "broad, no-fault travel protection" when in reality the policy is more limited. AC ¶ 116. But Plaintiff's own Complaint acknowledges that Allianz's offer expressly specified that "[t]erms, conditions and exclusions apply." *Id.* ¶ 19 n.4. Those full terms were readily available to Plaintiff, and admittedly *did* "accurately reflect[] the nature, essence, and substance of what [the policy] cover[ed]." AC ¶¶ 38-39. Plaintiff ignored opportunity after opportunity to read what he was purchasing—information given to him time and again via Allianz's offer, hyperlinks, email, and the policy. *See, e.g.*, *Roland v. Transamerica Life Ins. Co.*, 570 F. Supp. 2d 871, 881 (N.D. Tex. 2008) ("An insured is deemed to be on notice of all terms of an insurance policy . . . and his alleged failure to familiarize himself with the policy terms . . . cannot now form the basis of a misrepresentation claim."), *aff'd*, 337 F. App'x 389 (5th Cir. 2009).

Plaintiff also admits that an accurate policy "is provided to consumers . . . after payment is made . . . through a separate link." AC ¶¶ 38, 44. That policy expressly afforded him 10 days

---

[8] To substantiate his fraud theory, Plaintiff must point to affirmative misrepresentations. *See, e.g.*, *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007). "Absent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a RICO fraudulent scheme." *Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015); *see also C & B Sales & Serv., Inc. v. McDonald*, 95 F.3d 1308, 1319 (5th Cir. 1996) ("[A]s Humphrey had no fiduciary duty to C & B, his omissions were not fraudulent."), *modified in part on other grounds*, 111 F.3d 27 (5th Cir. 1997).

during which he had the right to cancel for any reason. AC Ex. C at 1. As other courts have explained, that too defeats any claim of misrepresentation. *See, e.g.*, *Hager v. Vertrue, Inc.*, 2011 WL 4501046, at *7 (D. Mass. Sept. 28, 2011) (offer of enrollment to a program was not deceptive where, after enrollment, the company sent "separate emails for each program with links to the programs' terms and conditions" with an opportunity to cancel); *Vernon v. Qwest Commc'ns Int'l, Inc.*, 925 F. Supp. 2d 1185, 1191 (D. Colo. 2013) (plaintiffs were bound by an online subscriber agreement "[e]ven if they enrolled without going to and reading the Subscriber Agreement, [because] they were given the opportunity to cancel within 30 days if they determined during that period that they were not comfortable with the terms and conditions"); *Roland*, 570 F. Supp. 2d at 881 (rejecting "misrepresentation claim" where plaintiff "fail[ed] to . . . take advantage of [policy's 30-day] rescission provision").

Plaintiff desperately tries to extract misrepresentations from other language in Allianz's offer. But that only underscores the weakness of his RICO claim. Plaintiff first argues that Allianz's choice to label its product "insurance" misleads customers into believing that the policy insures against all risks. AC ¶ 19. But Plaintiff's suggestion that the "plain meaning of" insurance contemplates a simple and unrealistic proposition that "[i]f I don't travel, I am insured," *id.*, is flatly incorrect. As the Eleventh Circuit has aptly noted, "[i]t is common knowledge that *all* insurance contracts contain specific definitions, requirements, and limitations on coverage." *Mellon Bank*, 957 F.2d at 858 (emphasis added). Plaintiff cannot show that Defendants made a misrepresentation by labeling insurance as "insurance."

Plaintiff also points to the fact that Allianz informs a consumer who declines trip insurance that "by declining coverage, [he is] responsible for all cancellation fees and expenses," AC ¶ 117. But that is true too. Plaintiff argues that this statement indicated that the inverse of that conditional

statement was likewise true—i.e. that if Plaintiff *did* choose insurance, Plaintiff would *not* be responsible for any "cancellation fees and expenses." But that is a logical fallacy. *Estrada v. Becker*, 917 F.3d 1298, 1305 n.10 (11th Cir. 2019) ("In formal logic, the inverse of a conditional cannot be inferred from the conditional."). Because Plaintiff fails to plead any misrepresentation claim, his RICO claim necessarily fails.

***Money Laundering.*** Plaintiff's money laundering theory is frivolous. To allege money laundering as a predicate act, Plaintiff must plead that American engaged in transactions using proceeds that it knows arose from "a specified unlawful activity" as defined by 18 U.S.C. § 1956(c)(7). *Zucker v. Farish*, 2018 WL 6570867, at *5 (N.D. Tex. Dec. 12, 2018) (citation omitted). Plaintiff fails to do so—the complaint deficiently and conclusorily alleges that American, "knowing that the money it receives represents the proceeds of *some form of unlawful activity*, accepts it in violation of 18 U.S.C. § 1956." AC ¶ 111(5) (emphasis added). That throwaway assertion is not enough to plead a money laundering claim.

### b. Plaintiff Fails To Adequately Allege That American Operated Or Managed A RICO Enterprise

Plaintiff also fails to adequately allege the existence of a RICO "enterprise" or that American "operated or managed" it. *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 551 (5th Cir. 2012). To allege a RICO "enterprise," Plaintiff must plead "the existence of an entity separate and apart from the pattern of racketeering activity." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 738 (5th Cir. 2019). "Where businesses are alleged to be in a RICO enterprise, a plaintiff must allege activity that goes beyond normal self-interested business behavior." *Cisneros v. Petland, Inc.*, 341 F. Supp. 3d 1365, 1373 (N.D. Ga. 2018) (citation omitted), *aff'd in relevant part*, 972 F.3d 1204 (11th Cir. 2020). The plaintiff must allege that "the companies were acting on behalf of a *distinct* enterprise"; simply pointing to a "commercial relationship" between two

parties is insufficient. *United Food & Commercial Worker Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854-55 (7th Cir. 2013) (emphasis added); "This is the case even where the plaintiff alleges that the individuals making up the enterprise acted fraudulently in pursuing their own business interests." *Cisneros*, 341 F. Supp. 3d at 1373-74. In short, an "enterprise must be more than a routine contractual combination" between multiple defendants acted only to further their own self-interests. *In re Mastercard Int'l Inc.*, *Internet Gambling Litig.*, 132 F. Supp. 2d 468, 487 (E.D. La. 2001).

Plaintiff cannot overcome that hurdle. Plaintiff alleges only that American contracted to allow Allianz to sell its insurance on American's website for a fee. AC ¶¶ 31, 54. Plaintiff himself alleges that American entered into that run of the mill business contract simply for its *own* financial benefit. *See id.* ¶ 114. Such allegations are incompatible with Plaintiff's obligation to plead that American was acting to further the objectives of a distinct enterprise, rather than its own business interests. *See United Food*, 719 F.3d at 854-56; *see also Green v. Bissell Homecare Inc.,* 2011 WL 13175163, at *11 (N.D. Ala. July 29, 2011) (collecting cases holding that "advertis[ing] a manufacturer's product does not create a RICO enterprise between the manufacturer and the retailer."), *aff'd*, 476 F. App'x 238 (11th Cir. 2012).

Plaintiff also fails to sufficiently allege that American "participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). Plaintiff's ultimate complaint is with *Allianz's* purportedly misleading insurance offer. *See, e.g.*, AC ¶ 2 ("Allianz is the main seller of the 'travel insurance policy' at issue in this case."); *id.* ¶ 19 (describing "Allianz's disclosure"); (describing "Allianz's offer"); *id.* ("[a]t most, he would be responsible for the $36.83 he would pay *to Allianz* for the policy and its coverage"); *id.* ¶ 24

(criticizing "Allianz's representations"); *id.* ¶ 25 ("Allianz's offer of insurance is made even more misleading"); *id.* ¶ 26 (criticizing "Allianz's insurance").

To be sure, Plaintiff blames American for supposedly providing "assistance" to Allianz. *See* AC ¶¶ 47-57. But "[i]n the Fifth Circuit, the proper RICO defendant must have some sort of *supervisory* involvement" to constitute "'*directing* the enterprise's affairs.'" *Ranieri v. AdvoCare Int'l, L.P.*, 336 F. Supp. 3d 701, 717 (N.D. Tex. 2018) (emphasis added) (quoting *Reves*, 507 U.S. at 179). American's role in letting Allianz market its product on American's website in exchange for compensation does not satisfy that test. *See, e.g.*, *Davis-Lynch*, 667 F.3d at 551 ("receiving funds or materials" is not sufficient absent of "control over the enterprise").

## 2. Plaintiff Fails To Adequately Allege A Cognizable Injury

Even if Plaintiff could show a violation of 18 U.S.C. § 1962, he "may not sue under RICO unless he can show concrete financial loss." *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 492 n.16 (5th Cir. 2003). Here, Plaintiff cannot plausibly allege "that [he] received less than what [he] bargained for." *Id.* (citing *Price*, 138 F.3d at 607); *see also Bowe v. Pub. Storage*, 106 F. Supp. 3d 1252, 1266 (S.D. Fla. 2015) (finding no RICO injury where there was "no evidence or testimony that the price paid for [insurance] was more than the actual value of [the insurance]"). Instead, Plaintiff received *precisely* what he bargained for—a trip insurance policy accompanied by terms and conditions qualifying the scope of coverage. Because "Allianz fully honored its contractual obligations" and Plaintiff "received the coverage and services for which he contracted," he cannot plausibly claim that he did not "receive[] the benefit of his bargain," meaning that he "suffered no injury." *Zamber*, 2020 WL 3163037, at *7.

## 3. Plaintiff Fails To Adequately Allege Causation

Finally, Plaintiff fails to adequately allege causation. Under RICO, Plaintiff must show that he was injured "*by reason of* a [RICO] violation," 18 U.S.C. § 1964(c) (emphasis added),

meaning that the violation was "both [a] but-for cause and [a] 'proximate cause'" of his alleged injury. *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 636 (5th Cir. 2016) (en banc) (quoting *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008)). To allege but-for causation, Plaintiff must plausibly plead a purported RICO violation that "'factually'" caused Plaintiff to suffer an injury that would not "have materialized" absent the violation. *Bridge*, 553 U.S. at 654, 658 (quoting *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 266 (1992)). To allege proximate causation, Plaintiff must plausibly plead a connection "between the injury asserted and the injurious conduct alleged" that is "direct" rather than "remote," "contingent," or "indirect." *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9-10 (2010) (plurality opinion) (quoting *Holmes*, 503 U.S. at 268, 271).

Plaintiff cannot make this showing. Plaintiff alleges a scheme of fraudulent inducement— *i.e.*, he claims that Defendants' misrepresentations dupe customers into purchasing insurance policies that they would not have bought had they known those policies' actual terms. *See* AC ¶¶ 106-118. But that is a non-starter because "[r]eliance upon an [alleged misrepresentation] that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law." *Prendes v. Select Portfolio Servicing, Inc.*, 2012 WL 6913511, at *5 (N.D. Tex. Dec. 28, 2012) (citation omitted); *see Levels v. Merlino*, 969 F. Supp. 2d 704, 725-26 (N.D. Tex. 2013). Because Plaintiff admits that the actual policy agreement between the parties "accurately reflects the nature, essence, and substance of what it covers," AC ¶¶ 38-39, Plaintiff cannot prove reliance even if he could show that something about Allianz's offer was false. That alone dooms his RICO claim.

Moreover, within 10 days of purchasing trip insurance—or through August 27, 2019, Plaintiff could have cancelled his trip insurance policy without charge. *See* AC Ex. C. at 1. *Even*

*after* that date, Plaintiff could have cancelled his policy and received "a refund of any unearned premium as long as [his] trip ha[d] not started and [he had] not filed a claim." *Id.* Thus, if Plaintiff learned of his work opportunity by August 27 and failed to cancel his policy, he cannot blame Defendants. *See* AC ¶¶ 20-21 (failing to specify date on which Plaintiff learned of offer, but noting he attempted to cancel his policy by around September 1). And his complaint suggests that his failure to seek a refund even *after* August 27 resulted not from the alleged fraud, but from advice he allegedly received from Allianz on a September 1, 2019 call—notifying him that his claim was not covered but that he should submit a claim to "see what could be done." *Id.* ¶ 21. Because *that* action prevented him from obtaining a refund, he cannot show that the alleged fraud (of which there was none anyways) caused his alleged injury. Plaintiff thus fails to plausibly allege that fraud, rather than his own failure to take advantage of his policy, caused injury.

## III. PLAINTIFF'S DECLARATORY RELIEF CLAIM SHOULD BE DISMISSED

Plaintiff's declaratory judgment claim, AC ¶¶ 77-87, should be dismissed because it is not supported by a substantive claim and rests on past conduct.

"Because the Texas Declaratory Judgments Act is a procedural, rather than substantive, provision," Plaintiff's request for declaratory relief must be "construe[d] . . . to be one brought under the federal Declaratory Judgment Act." *O'Neill v. CitiMortgage, Inc.*, 2014 WL 1199338, at *4 (N.D. Tex. Mar. 24, 2014); *see Falk v. Wells Fargo Bank*, 2011 WL 3702666, at *4 (N.D. Tex. Aug. 19, 2011) ("[Federal] district courts 'cannot award relief pursuant to the Texas Declaratory Judgment Act because declaratory judgment is procedural, not substantive, and federal courts apply their own procedural rules.'"), *aff'd*, 541 F. App'x 481 (5th Cir. 2013). And "the [federal] Declaratory Judgment Act alone does not create a federal cause of action." *Harris Cty. Tex. v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015). Instead, it "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other

substantive law." *O'Neill*, 2014 WL 1199338, at *4 (citation omitted).  Because Plaintiff has failed to otherwise state a substantive claim, he has necessarily "fail[ed] to state a claim for declaratory relief." *Id.* at *4.

Declaratory relief is particularly inappropriate here because Plaintiff has not alleged "a substantial likelihood that he will suffer injury in the future." *Bauer v. Tex.*, 341 F.3d 352, 358 (5th Cir. 2003).  "[P]ast exposure to [allegedly] illegal conduct" cannot "not evince [the kind of] present case or controversy" necessary to obtain "declaratory relief." *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015).  Because Plaintiff's duplicative declaratory claim for declaratory relief is focused on conduct "at the time of the [contract] offer," AC ¶ 79, this claim fails with the rest.

## CONCLUSION

For the foregoing reasons, this Court should dismiss all of the claims in Plaintiff's Complaint with prejudice.

Dated:  October 23, 2020

Respectfully submitted,

*/s/ Dee J. Kelly, Jr.*

James E. Brandt (*pro hac vice*)
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022
(212) 906-1200
james.brandt@lw.com

Michael E. Bern (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200
michael.bern@lw.com

Dee J. Kelly, Jr. (State Bar No. 11217250)
Lars L. Berg (State Bar No. 00787072)
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
(817) 878-3524
dee.kelly@kellyhart.com
lars.berg@kellyhart.com

Humberto H. Ocariz (*pro hac vice*)
GREENBERG TRAURIG, P.A.
333 SE 2nd Avenue, Suite 4400
Miami, FL 33131
(305) 579-0590
ocarizb@gtlaw.com

*Counsel for Defendant American Airlines, Inc.*

## CERTIFICATE OF SERVICE

I certify that on October 23, 2020, a true and correct copy of the foregoing document was electronically filed through the Court's CM/ECF system and served via CM/ECF on all registered counsel.

*/s/ Dee J. Kelly, Jr.*
Dee J. Kelly, Jr.