IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **IBALDO ARENCIBIA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | Civil Action No.  **4:20-cv-00819-O** |
| | § | |
| **AGA SERVICE COMPANY d/b/a** | § | |
| **ALLIANZ GLOBAL ASSISTANCE,** | § | |
| **AMERICAN AIRLINES, INC., and** | § | |
| **JEFFERSON INSURANCE CO.,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER

Before the Court is Defendant American Airlines, Inc.'s ("American") Motion to Dismiss Plaintiff's Amended Class Action Complaint (ECF No. 85), filed October 23, 2020. Having considered the motion, response, reply, pleadings, record, and applicable law, and for the reasons that follow, the Court **GRANTS** American's Motion to Dismiss and, pursuant to 28 U.S.C. § 1404(a), sua sponte **TRANSFERS** the remaining claims against Defendants AGA Service Company d/b/a Allianz Global Assistance ("Allianz") and Jefferson Insurance Company ("Jefferson") to the United States District Court for the Southern District of Florida, the forum in which Plaintiff Ibaldo Arencibia's ("Arencibia") initially filed this lawsuit.

## I.    BACKGROUND

This case arises from Arencibia's decision to purchase a travel insurance policy from Allianz on August 17, 2019, while booking airline tickets through American's website. Arencibia contends that Allianz wrongfully induced him to purchase the policy by misrepresenting the nature and extent of coverage and that American was complicit in Allianz's scheme to mislead unsuspecting customers into purchasing travel insurance, driven by kickbacks from Allianz. The

Court now sets forth the factual allegations drawn from the Amended Class Action Complaint (ECF No. 84), the live pleading.[1]

On August 17, 2019, Arencibia purchased a roundtrip airline ticket on American's website to travel from Miami, Florida, to Bogotá, Colombia. Am. Compl. ¶ 18. During the booking process, Arencibia was presented with the option to purchase travel insurance from Allianz. *Id.* ¶¶ 18-19. Arencibia purchased the insurance policy for $36.83, allegedly because "it seemed like a good option to protect his trip." *Id.* ¶¶ 18-19, 37. Arencibia alleges "Allianz knowingly and voluntarily accepted th[at] benefit[] by collecting the payment for [the] premium[]" when he "purchased travel protection insurance" on American's website. *Id.* ¶ 94. He alleges Allianz separately contracted to pay American compensation in exchange for "letting [Allianz] sell 'insurance' on [its] website." *Id.* ¶¶ 31, 54.

After Arencibia purchased the travel insurance policy, he was offered the opportunity to earn $3,500 by serving as a lighting technician on a seven-day, multi-state tour on days overlapping his planned Bogotá trip. *Id.* ¶ 20. Believing he was insured, he contacted Allianz on September 1, 2019. *Id.* ¶ 21. The Allianz agent informed him that his work conflict was not covered by his policy and that he should call American to cancel the trip and then submit a claim to Allianz online to "see what could be done." *Id.* Arencibia completed Allianz's online claim submission. *Id.* ¶¶ 22-23. On September 9, 2019, Allianz informed Arencibia that it would be "unable to provide benefits under the coverage you purchased because . . . [the Policy] is a named perils travel insurance program [and] covers only the specific situations, events and losses included in [the Policy] and only under the conditions [Allianz] describe[s]." *Id.* ¶ 35 and Ex. B (denial letter).

---

[1] In its recitation of the facts, the Court views all well-pleaded allegations in the live pleading as true and draws all reasonable inferences in Plaintiff's favor. *See Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).

Arencibia alleges Allianz's denial letter was at odds with representations by Defendants about the travel insurance policy he believed he had purchased, which included broad language encouraging purchase and alluded to the supposed "insurance" protections. *Id.* ¶ 24. Arencibia contends that Allianz's offer on American's website misrepresented the nature and substance of his travel insurance policy. *See, e.g., id.* ¶¶ 19, 69(a), 79-80. He alleges he was led to believe he was purchasing broad insurance coverage based on, among other things: (1) Allianz's disclosure, which clarified that, if he did not choose the insurance option, he would be personally responsible for cancellations fees and expenses; (2) the requirement to accept or decline travel insurance before booking, the broad offer language on American's website, such as "Yes, protect my trip," and the representation that the Policy "[i]ncludes trip cancellation, trip interruption, . . . and more"; (3) declination of the offer by selecting "No" led to a pop-up warning that read "No, I choose not to protect my [price of my flight] purchase"; and (4) no pop-up or readily visible information warned that the policy covered only named perils. Arencibia alleges that these representations, collectively, would give a reasonable consumer the net impression that Allianz provides broad, no-fault insurance protection.

With regard to Jefferson, Arencibia alleges that

> as the signer of the policy, [Jefferson] is well aware of its contents and knows that, in essence and substance, the travel insurance policy is narrowly limited to medical emergencies or catastrophic events, in contradiction to the offer of insurance its partners, Allianz and [American], make to consumers at the time of purchase . . . Although it is aware of the policy and its limitations, Jefferson decides to participate in this scheme because it profits millions of dollars from it.

*Id.* ¶¶ 64-65.

With respect to American, Arencibia contends that American provides "[a]ssistance" to Allianz's scheme by permitting Allianz to utilize American's "online platform"—its website—to make allegedly misleading travel insurance offers to customers like himself. *Id.* ¶¶ 47, 48.

Arencibia further alleges American is complicit in Allianz's scheme to mislead unsuspecting customers into purchasing this empty "insurance" coverage, driven by profitable kickbacks it receives from Allianz. *Id.* ¶ 31.

On October 17, 2019, Plaintiff filed this putative class action lawsuit in the Southern District of Florida. ECF No. 1. Allianz and Jefferson filed a motion to dismiss for failure to state a claim. *See* ECF No. 26. American, in addition to filing a motion to dismiss, filed a motion to sever and transfer all claims against it to the Northern District of Texas, Fort Worth Division, based on a forum selection clause to which Arencibia agreed when he joined American's AAdvantage loyalty program. *See* ECF No. 33.

Based on the forum selection clause, on August 5, 2020, the presiding judge in the Southern District of Florida transferred the entire matter to this Court, declining to address American's request for severance or the parties' pending motions to dismiss. *See* Order, ECF No. 61. Following transfer, Arencibia filed his Amended Class Action Complaint individually and on behalf of all persons who purchased a travel insurance policy from Allianz through American's website within the applicable limitations period ("Class Period"). He also seeks to bring this action on behalf of a subclass of "all Florida residents" who purchased a travel insurance policy from Allianz through American's website (the "Florida subclass") and a subclass of "all Texas residents" who likewise purchased a travel insurance policy from Allianz through American's website (the "Texas subclass"). Am. Compl. ¶ 66. Arencibia alleges that "most putative Class Members are exposed, through [American's] website, to an equally misleading offer of insurance for which they are not reimbursed when trips are cancelled." *Id.* ¶ 70.

On behalf of the Texas subclass, Arencibia asserts two claims under Texas law against American: (1) for unjust enrichment (Count II) and (2) for violations of the Texas Deceptive Trade Practices Act ("TDTPA"), Tex. Bus. & Com. Code § 17.50(a) (Count VI).

On behalf of the Florida subclass, Arencibia asserts two claims under Florida law against Allianz and Jefferson: (2) for unjust enrichment (Count III) and (2) for violations of the Florida Deceptive and Unfair Trade Practices Act, § 501.201 et seq., Fla. Stat. ("FDUTPA") (Count IV).

On behalf of a nationwide class, Arencibia asserts a claim against all Defendants alleging violations of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. 1961, et seq. ("RICO") (Count V) and seeks declaratory judgment (Count I). Arencibia seeks actual monetary damages, treble damages under RICO, punitive damages under FDUTPA and TDTPA, pre-judgment interest, and attorney's fees and costs.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted."

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing

*Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court may not accept legal conclusions as true, and only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 678-79. When well-pleaded factual allegations are present, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

"Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A court may also consider documents that a defendant attaches to a motion to dismiss if plaintiff's complaint refers to them and they are central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

III.    ANALYSIS

    A.  **Arencibia's Claims Against American**

        1.  **Claims on Behalf of Texas Subclass (Counts II and VI)**

            a.      **Article III Standing**

Article III standing is a threshold question in every federal case and "determin[es] the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). That Arencibia seeks to proceed with his claims on a class basis does not change the fundamental requirement of standing. "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976).

American moves to dismiss Counts II and VI because Arencibia, a resident of Florida, lacks Article III standing to assert claims against American on behalf of the Texas subclass:

> Plaintiff's state law claims against American should be dismissed most obviously because Plaintiff is not a member of the only subclass asserting unjust enrichment and Texas DTPA claims against American. Count II and Count VI of Plaintiff's Amended Complaints assert claims against American on behalf of a Texas subclass of "Texas residents." Am. Compl. ¶ 66. But Plaintiff admittedly is a Florida resident. *Id.* ¶ 1.

American's Brief Support Mot. Dismiss 7, ECF No. 86.

Arencibia counters that he undisputedly possesses Article III standing and that American is actually challenging whether he can represent absent class members—a question to be addressed in the Rule 23 class certification analysis, not on a motion to dismiss. Pl.'s Resp. 4, ECF No. 90. For the reasons that follow, the Court rejects Arencibia's argument.

Two Supreme Court opinions, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) and *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), are at the heart of the issue. In *Ortiz*, the Court addressed arguments regarding the Article III standing of members of a global settlement class who, petitioners argued, had not suffered an injury in fact. 527 U.S. at 831. The Court determined, in that case, to address class certification issues before addressing questions relating to Article III standing. In *Amchem*, the Supreme Court addressed the interplay between Federal Rule of Civil Procedure 23 and class settlements. It also, however, agreed with the Third Circuit's decision not to address challenges to the plaintiffs' Article III standing to assert their claims, finding the class certification issues "dispositive" and therefore "logically antecedent" to issues of standing in that case. 521 U.S. at 612-13.

The standing issue in *Ortiz* and *Amchem* related to proposed class members, that is, persons who were not yet parties to the case. By contrast, however, this Court is confronted with a challenge to the standing of an actual, not proposed, Plaintiff. *Ortiz* does not *require* the Court to defer ruling on standing in all circumstances. *See Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*, 301 F.3d 329, 333 n.2 (5th Cir. 2002) (noting the limited exception enunciated in *Ortiz* and holding that Article III standing determination may precede class certification issues). Numerous courts have addressed standing at the pleadings stage in similar circumstances and concluded that named plaintiffs lack standing to bring claims in states where they do not reside, finding that class certification issues are not "logically antecedent" to the issue of Article III standing when a named plaintiff seeks to assert claims under the laws of a state in which he does not reside and was not injured. *See, e.g.*, *Schertzer v. Bank of Am., N.A.*, 445 F. Supp. 3d 1058, 1072 (S.D. Cal. 2020) (dismissing claims asserted under the laws of states in which no named plaintiff resided); *In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 49 (E.D.N.Y. 2014),

*on reconsideration sub nom. In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 14 F. Supp. 3d 99 (E.D.N.Y. 2014) (dismissing claims asserted under the laws of states in which no plaintiff resided, concluding "Plaintiffs may only assert a state claim if a named plaintiff resides in, does business in, or has some other connection to that state."); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 656 (E.D. Mich. 2011) (rejecting plaintiffs argument that *Ortiz* required the court to defer ruling on plaintiffs' standing to bring claims in states where they did not reside and finding no Article III standing under the laws of those states); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 924 (N.D. Ill. 2009) (same); *In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409, 418-19 (E.D. Pa. 2009) (same); *see generally* 1 McLaughlin on Class Action, § 4.28 (17th ed. & 2020 Update) ("Named Plaintiffs generally lack standing to assert claims under the laws of the States in which they do not reside or in which they suffered no injury."); *see id.* n.111 (collecting cases).

"To hold otherwise 'would allow Plaintiff to engage in lengthy and expensive discovery with respect to alleged violations of state laws when the Court cannot be certain that any individual suffered an injury under those laws.'" *In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d at 50 (quoting *Smith v. Pizza Hut, Inc.*, No. 09-cv-01632 (CMA)(BNB), 2011 WL 2791331, at *9 (D. Colo. July 14, 2011)); *see also In re Wellbutrin*, 260 F.R.D. 143, 155 (E.D. Pa. 2009) (finding that certifying a class action without named plaintiffs who have standing to assert each claim would "allow named plaintiffs in a proposed class action, with no injuries in relation to the laws of certain states referenced in their complaint, to embark on lengthy class discovery with respect to injuries in potentially every state in the Union.").

Because Arencibia's lack of standing is "plain enough from the pleadings," it is an appropriate basis for dismissal even if it overlaps with issues typically raised at class certification.

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Arencibia does not contest that his Amended Complaint asserts state law claims against American only "on behalf of the Texas Subclass," which is composed of only Texas residents. *See* Am. Compl. ¶¶ 66, 88-91, 119-30. Because he is admittedly not a member of that group, no plaintiff in this case advances a claim under Counts II or VI of the Amended Complaint. Accordingly, the Court grants American's Motion to Dismiss Counts II and VI as Arencibia, a Florida resident, lacks standing to assert claims under Texas law on behalf of a Texas subclass.

### b.   Failure to State a Claim

In the alternative, the Court grants American's Motion to Dismiss Counts II and VI pursuant to Rule 12(b)(6) for failure to state claim.

### i.   Count II (Unjust Enrichment on Behalf of Texas Subclass)

First, American moves to dismiss Count II alleging unjust enrichment for failure to state a claim under Texas law. American's Brief Support Mot. Dismiss 11, ECF No. 86. In response, Arencibia concedes that "unjust enrichment may not be an independent claim in Texas," but he argues that a party may recover on other claims under an unjust enrichment theory when the defendant has obtained a benefit through fraud or duress. Pl.'s Resp. 7-8, ECF No. 90.

Texas law does not recognize an independent cause of action for unjust enrichment. *Clapper v. Am. Realty Inv'rs, Inc.*, No. 3:14-cv-2970-L, 2019 WL 5865709, at *9 (N.D. Tex. Nov. 7, 2019); *Hancock v. Chi. Title Ins. Co.*, 635 F. Supp. 2d 539, 560 (N.D. Tex. 2009) (Fitzwater, J.). "Moreover, Texas courts of appeals have consistently held that unjust enrichment is not an independent cause of action, but is instead a theory upon which an action for restitution may rest." *Hancock*, 635 F. Supp. 2d at 560 (citations omitted).

Assuming the Amended Complaint is construed to seek recovery under some other cause of action under an unjust enrichment theory, the Fifth Circuit recently emphasized that a party seeking to recover under such a theory must "prove[] that [the opposing party] obtained a benefit . . . by fraud, duress, or the taking of an undue advantage." *Dig. Drilling Data Sys., L.L.C. v. Petrolink Servs.*, 965 F.3d 365, 379 n.11 (5th Cir. 2020) (citation omitted). Arencibia argues that he has alleged American supports Allianz's purported scheme by providing access to its website, and allegedly requiring customers to choose whether to buy trip insurance. Pl.'s Resp. 8, ECF No. 90. These types of allegations do not amount to plausible allegations of fraud or duress. Further, insofar as Arencibia alleges that American implies it is the seller of the insurance or a close partner to Allianz, the Court notes that in the Amended Complaint he alleges that American discloses that the insurance is purchased from a third party—not American. *See* Am. Compl. ¶ 49.

For these reasons, the Court concludes that Arencibia fails to state a claim for unjust enrichment under Texas law or to plausibly allege that American obtained a benefit by fraud, duress, or the taking of undue advantage. Accordingly, in the alternative to dismissing Count II because Arencibia lacks Article III standing to bring this claim on behalf of the Texas subclass, the Court grants American's Motion to Dismiss Count II for failure to state a claim.

> ii.     *Count VI (Violations of TDTPA on Behalf of Texas Subclass)*

American moves to dismiss Count VI alleging violation of the TDTPA for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). American's Brief Support Mot. Dismiss 12-13, ECF No. 86.

To prove a claim under the TDTPA, Tex. Bus. & Com. Code § 17.50(a), Plaintiff must establish (1) that he is a "consumer"; (2) that American "engaged in a false, misleading, or deceptive act" as defined by § 17.46; (3) that he "relied to his detriment on the deceptive act"; (4)

that he suffered "actual damages"; and (5) that American's conduct "was the producing cause" of those damages. *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 823-24 (Tex. 2012). The TDTPA also requires the plaintiff to prove, as a separate element, "detrimental reliance." *Gordon v. Sig Sauer, Inc.*, 2019 WL 4572799, at *21 (S.D. Tex. Sept. 20, 2019); *see* Tex. Bus. & Com. Code § 17.50(a)(1)(B).

Even viewing all well-pleaded allegations as true, the Court determines that Arencibia has failed to plead a plausible claim that American "engaged in a false, misleading, or deceptive act" as defined by § 17.46, or that he detrimentally relied on any conduct by American. First, the Amended Complaint is targeted at what Arencibia alleges are Allianz's representations. As American correctly notes, Arencibia alleges repeatedly that his real complaint is with "Allianz's offer," *see e.g.*, Am. Compl. ¶¶ 19, 25, 28, 35, 46 "Allianz's representations," *id.* ¶¶ 24, 45, "Allianz's disclosure," *id.* ¶¶ 19, 25, and "Allianz's insurance," *id.* ¶ 26, that "Allianz sells," *id.* ¶ 4. The Court agrees with American that none of those complaints state a plausible claim under the TDTPA against American.

In response, Arencibia argues that American failed to disclose information about his policy. Pl.'s Resp. 2, 10, ECF No. 90. Under Texas law, however, "an insured's mistaken belief concerning the extent of coverage is not grounds for a misrepresentation claim" under the TDTPA "absent some affirmative misrepresentation of the terms of coverage." *Glenn v. L. Ray Calhoun & Co.*, 83 F. Supp. 3d 733, 749-50 (W.D. Tex. 2015). Arencibia does not allege any affirmative misrepresentation made by American about his coverage.

Additionally, Arencibia alleges he purchased travel insurance based on what the policy offered, Am. Compl. ¶¶ 24-26, and not because he believed that American was the source of the travel insurance. He thus cannot show that he detrimentally relied on any supposed misimpression.

- 12 -

For these reasons, the Court concludes that Arencibia fails to plausibly allege that American "engaged in a false, misleading, or deceptive act" as defined by § 17.46, or that he detrimentally relied on any false, misleading, or deceptive act by American. Thus, in the alternative to dismissing Count VI because Arencibia lacks Article III standing to bring this claim on behalf of the Texas subclass, the Court determines he has failed to state a claim that American violated the DTPA. Accordingly, the Court grants American's Motion to Dismiss Count VI for failure to state a claim.[2]

### 2.      Count V – RICO Violation Against American

On behalf of a nationwide class, Arencibia alleges American violated RICO (Count V). American moves to dismiss Count V as barred by the McCarran-Ferguson Act ("MFA") and, alternatively, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). American's Brief Support Mot. Dismiss 14-24, ECF No. 86. Because the Court concludes that Arencibia has failed to state a claim for a RICO violation, it does not reach American's alternative argument that Count V is barred by the MFA.

To prevail on a civil RICO claim under 18 U.S.C. § 1964(c), the plaintiff must prove (1) "a violation of [18 U.S.C. § 1962]"; (2) "injury" to "business or property"; and (3) "causation." *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998). To establish a section 1962(c) violation, Arencibia must prove that American (1) "engage[d] in" (2) "a pattern of racketeering activity" (3) "connected to the acquisition, establishment, conduct, or control of an enterprise." *Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 559 (5th Cir. 2015). American

---

[2] The Court's decision to dismiss Counts II and VI based on Arencibia's lack of Article III standing to assert claims on behalf of a Texas subclass and, alternatively, for failure to state a claim under Rule 12(b)(6), obviates the need for the Court to address American's argument that Counts II and VI are preempted by the Airline Deregulation Act, which bars the "enact[ment] or enforce[ment]" of any state "law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1).

moves to dismiss, arguing that the Amended Complaint "fails to plausibly allege these elements." American's Brief Support Mot. Dismiss 17, ECF No. 86.

The Court first addresses American's contention that Arencibia fails to plead that American engaged in predicate acts of racketeering. Arencibia alleges that American committed mail and wire fraud, as well as money laundering. Am. Compl. ¶ 111. According to American, "neither theory is remotely viable." American's Brief Support Mot. Dismiss 17, ECF No. 86. For the reasons that follow, the Court agrees.

For "mail fraud and wire fraud [to serve] as predicate acts," Arencibia must allege that American (1) participated in a "scheme or artifice to defraud" involving the mails or wires, and (2) harbored an "intent to defraud." *Chris Albritton Const. Co. v. Pitney Bowes Inc.*, 304 F.3d 527, 532 (5th Cir. 2002) (emphasis omitted). A scheme to defraud requires sufficient allegations of "false or fraudulent pretenses, representations or promises," *Chris Albritton*, 304 F.3d at 532, that are "material," *United States v. Evans*, 892 F.3d 692, 712 (5th Cir. 2018).

Arencibia alleges that when "the enterprise makes (or permits partners to make)" statements like "Yes, protect my trip" and "Includes trip cancellation, trip interruption, … and more," it portrays that the product being sold offers "broad, no-fault travel protection" when in reality the policy is more limited. Am. Compl. ¶ 116. But (1) Allianz's offer warned Arencibia that "[t]erms, conditions, and exclusions apply," Declaration of Coverage at 2, Am. Compl. Ex. C; (2) Allianz provided him with a hyperlink to view those terms; (3) Allianz provided him at the time of purchase with direct access to a detailed 36-page policy that "accurately reflect[ed] the nature, essence, and substance of what it covers"; (4) Allianz emailed him another link to those terms; and (5) the Allianz policy afforded him 10 days after receiving it to review and cancel without charge for any reason. Am. Compl. ¶¶ 19 n.4, 38-39, 44; *id.* at Exs. C-D. Based on the express language

of the travel insurance policy, the Court concludes that Arencibia cannot plausibly allege a material misrepresentation by American.[3] "Reliance upon an [alleged misrepresentation] that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law." *Prendes v. Select Portfolio Servicing, Inc.*, 4-12-cv-337-Y, 2012 WL 6913511, at *5 (N.D. Tex. Dec. 28, 2012) (citation omitted). Further, "[u]nder Texas law, an insured has a duty to read his insurance policy, is responsible for understanding the policy's terms and conditions, and is bound by those policy terms." *United Neurology, P.A. v. Hartford Lloyd's Ins. Co.*, 101 F. Supp. 3d 584, 614-15 (S.D. Tex.), *aff'd*, 624 F. App'x 225 (5th Cir. 2015); *Roland v. Transamerica Life Ins. Co.*, 570 F. Supp. 2d 871, 881 (N.D. Tex. 2008) ("An insured is deemed to be on notice of all terms of an insurance policy . . . and his alleged failure to familiarize himself with the policy terms . . . cannot now form the basis of a misrepresentation claim."), *aff'd*, 337 F. App'x 389 (5th Cir. 2009). Because Arencibia fails to plausibly allege any actionable misrepresentation by American, his RICO claim against American fails.

Further, Arencibia's invocation of money laundering as a predicate act is conclusory. To allege money laundering as a predicate act, Arencibia must plead that American engaged in transactions using proceeds that it knows arose from "a specified unlawful activity" as defined by 18 U.S.C. § 1956(c)(7). *Zucker v. Farish*, 3-18-cv-1790-K, 2018 WL 6570867, at *5 (N.D. Tex. Dec. 12, 2018) (citation omitted). Arencibia alleges that American, "knowing that the money it receives represents the proceeds of some form of unlawful activity, accepts it in violation of 18

---

[3] Arencibia's complaint is with Allianz's offer; he alleges no *affirmative* misrepresentation made by American. In his response brief, he acknowledges that his "core" contention is that American failed to "disclose the truth about the insurance." Pl.'s Resp. 2, ECF No. 90. "[A]bsent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a RICO fraudulent scheme." *Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015) (internal citation omitted); *see also C & B Sales & Serv., Inc. v. McDonald*, 95 F.3d 1308, 1319 (5th Cir. 1996) ("[A]s Humphrey had no fiduciary duty to C & B, his omissions were not fraudulent."), *modified in part on other grounds*, 111 F.3d 27 (5th Cir. 1997).

U.S.C. § 1956." Am. Compl. ¶ 111(5). This conclusory allegation is not enough to plead a money laundering claim.

Further, assuming arguendo that Arencibia has pleaded a violation of 18 U.S.C. § 1962, he "may not sue under RICO unless he can show concrete financial loss." *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 492 n.16 (5th Cir. 2003). In support of its Motion to Dismiss, American contends that Arencibia has not plausibly alleged "that [he] received less than what [he] bargained for." American's Brief Support Mot. Dismiss 22, ECF No. 86. *Id.* American argues that Arencibia "received precisely what he bargained for—a trip insurance policy accompanied by terms and conditions qualifying the scope of coverage." Based on the allegations in the Amended Complaint, and reviewing the plain language of the policy attached as Exhibit C thereto, the Court agrees and concludes that Arencibia "received the coverage and services for which he contracted," and thus cannot plausibly claim that he did not "receive[] the benefit of his bargain," meaning that he "suffered no injury." *Zamber v. Amer. Airlines*, 4-20-cv-114-O, 2020 WL 3163037, at *7 (N.D. Tex. June 11, 2020).

For these reasons, the Court determines that Arencibia has failed to adequately allege a violation of RICO by American. Accordingly, the Count grants American's Motion to Dismiss Count V.

### 3. Request for Declaratory Judgment

Arencibia seeks a declaratory judgment on behalf of a nationwide class that Defendants wrongfully induced him to purchase travel insurance protection by misrepresenting the substance, essence and nature of what their product was[.]" Am. Compl. ¶ 87.

"Because the Texas Declaratory Judgments Act is a procedural, rather than substantive, provision,"Arencibia's request for declaratory relief must be "construe[d] . . . to be one brought

under the federal Declaratory Judgment Act." *O'Neill v. CitiMortgage, Inc.*, 4-13-cv-656-O, 2014 WL 1199338, at *4 (N.D. Tex. Mar. 24, 2014). Once a court dismisses the underlying claims, there are "no claims for which the district court [can] grant declaratory relief." *Val-Com Acquisitions Trust v. CitiMortgage, Inc.*, 421 F. App'x 398, 401 (5th Cir. 2011). Because American is entitled to dismissal of the underlying claims asserted against it, the Court must dismiss the declaratory judgment claim. *Id.*; *see also Harris Cty. v. MERSCORP Inc.*, 791 F.3d 545, 553 (5th Cir. 2015) ("Plaintiffs' request for declaratory relief should also be dismissed because it cannot survive without an underlying cause of action.").

### 4. Leave to Amend

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Hitt v. City of Pasadena*, 561 F.2d 606, 608–09 (5th Cir. 1977) (holding that a complaint should be dismissed under Rule 12(b)(6) only "after affording every opportunity for the plaintiff to state a claim upon which relief can be granted"). Here, Arencibia has already had the opportunity to amend his pleadings after previewing American's initial Motion to Dismiss, which was filed and fully briefed while the matter was pending in the Southern District of Florida. Thereafter, he was permitted to file an Amended Class Action Complaint. Under these circumstances, and given Arencibia's failure to articulate how amendment would be anything other than futile, the Court concludes Arencibia has pled his best case and allowing any further amendments would merely delay resolution of this matter.

### B. Arencibia's Claims Against Allianz and Jefferson Insurance

Arencibia, who resides in Florida, initially filed this lawsuit in the Southern District of Florida. American filed a motion to sever and transfer all claims against it to the Northern District of Texas, Fort Worth Division, based on a forum selection clause to which Arencibia agreed when he joined American's AAdvantage loyalty program. On August 5, 2020, granting American's motion to transfer but declining its motion to sever, the presiding judge in the Southern District of Florida transferred the entire lawsuit to this Court, declining to rule of American's request for severance or the pending motions to dismiss.

The Court has granted American's motion to dismiss Arencibia's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and for lack of standing. As the forum selection clause was the sole basis for transfer to the Northern District of Texas, this Court must now address whether this lawsuit should be transferred to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." The purpose of section 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense[.]" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26, 27 (1960)). The Court may raise whether to transfer venue *sua sponte*. *See Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988) (holding that district court may *sua sponte* transfer action pursuant to 28 USC § 1404(a)); *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 761 (5th Cir. 1989) ("Such transfers [under section 1404(a)] may be made *sua sponte*."); *Franklin v. GMAC Mortg.*, 2013 WL 2367791, at *1 (N.D. Tex. May 30, 2013) ("The Court may . . . issue a Section 1404(a) transfer order *sua sponte*.") (Fitzwater, J.). When deciding whether to transfer venue, discretion must be exercised according to an

"individualized, case-by-case consideration of convenience and fairness." *Van Dusen,* 376 U.S. at 622. A court has "broad discretion in deciding whether to order a transfer." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (*en banc*) ("*Volkswagen II*").

In determining whether to transfer the action, the Court considers "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (internal quotations and citations omitted). Under section 1404(a), a district court is to first determine "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *In re Horseshoe Entm't*, 337 F.3d 429, 432 (5th Cir. 2003)). Once this initial determination is made, a district court

> turn[s] to the language of § 1404(a), which speaks to the issue of "the convenience of parties and witnesses" and to the issue of "in the interest of justice." The determination of "convenience" turns on a number of private and public interest factors, none of which [is] given dispositive weight. The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law.

*Id.* (citations omitted). In a section 1404(a) analysis, a plaintiff's choice of forum "should be respected" unless "the transferee venue is clearly more convenient." *Volkswagen II*, 545 F.3d at 315. A plaintiff's choice of forum, however, is not an independent factor within the § 1404(a) analysis." *Id.* at 314 n.10. Here, Arencibia chose his home forum when he initially filed this lawsuit in the Southern District of Florida.

Thus, the Court first considers whether venue is proper in the Southern District of Florida. Arencibia is a resident of Dade County, Florida. Defendants Allianz and Jefferson, in their original motion to dismiss, did not object to venue in the Southern District of Florida. Accordingly, the remaining claims in this action are eligible to be transferred back to the Southern District of Florida at the Court's discretion if, after considering the public and private interest factors, the Court concludes that "on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet*, 868 F.2d at 1436.

In this case, while some of the section 1404(a) factors are neutral as between this Court and the Southern District of Florida, those factors that favor the Southern District of Florida, on balance, strongly favor transfer to the Southern District of Florida, and no factor actually favors maintaining this case in the Northern District of Texas. First, Arencibia does not allege any facts suggesting that any, much less a substantial part, of the events giving rise to his claims occurred in Texas.  Additionally, Defendant Jefferson, a New York corporation, and Allianz, a Virginia corporation, are affiliated companies indirectly owned by Allianz SE, a publicly held German company. *See* Defs.' Corporate Disclosure Statement, ECF No. 25. For these Defendants, the Court concludes it is no less convenient for them to litigate this action in the Southern District of Florida than it would be to litigate in this judicial district. Further, the Court concludes that it would likely be equally convenient for witnesses if the action were transferred to the Southern District of Florida, and access to sources of proof would likely be equally available in the Southern District of Florida.

And, in light of the Court's decision to grant American's Motion to Dismiss, no Texas state-law claims remain. The sole remaining claims are for unjust enrichment under Florida law (Count III), and for violations of the FDUTPA (Count IV), as well RICO (Count V). In addition

to moving to dismiss Arecibia's claims under Florida law pursuant to Federal Rule of Civil Procedure 12(b)(6), Allianz and Jefferson Insurance make specifics arguments that, under Florida law, certain claims are not permitted to continue on a class-wide basis.[4] The Southern District of Florida's familiarity with Florida law that will govern the remaining claims clearly favors transfer of this matter to the Southern District of Florida. *See Volkswagen I*, 371 F.3d at 203; *In re Horseshoe Entm't*, 337 F.3d at 432.

Accordingly, for the convenience of the parties and in the interest of justice, pursuant to 28 U.S.C. § 1404(a), the Court will transfer all remaining claims in this action to the United States District Court for the Southern District of Florida, where this lawsuit was initially filed.

## IV.    CONCLUSION

Based on the foregoing, the Court **GRANTS** American Airlines, Inc.'s Motion to Dismiss Plaintiff's Amended Class Action Complaint (ECF No. 85). Plaintiffs' claims against American Airlines, Inc. are hereby **DISMISSED with prejudice**, and American Airlines, Inc. is **DISMISSED** as a party to this lawsuit. Pursuant to 28 U.S.C. § 1404(a), the court *sua sponte* **transfers** all remaining claims against the remaining Defendants AGA Service Company d/b/a Allianz Global Assistance and Jefferson Insurance Company to the United States District Court for the Southern District of Florida, where this lawsuit was originally filed. In light of this ruling,

---

[4] As just one an example, Allianz and Jefferson, in support of their motion to dismiss, assert that, under Florida law, Plaintiff's claims for misleading and deceptive insurance practices, however denominated, are inappropriate for class treatment. "Under Florida law, claims rooted in fraud and deceit are based on separate contracts or transactions and are 'inherently diverse' because 'the demands of the various defrauded parties are not only legally distinct, but each depends upon its own facts.'" *Buell v. Direct General Ins. Agency, Inc.*, No. 8:06-cv-1791-T-26MSS, 2007 WL 1296347, at *2 (M.D. Fla. May 1, 2007) ("Florida law is clear that fraud claims are inappropriate for class treatment as a matter of law because of the individual questions presented."), *aff'd*, 267 F. App'x 907 (11th Cir. 2008). Thus, no statewide or nationwide class could be certified when the claims sound in fraud, misrepresentation, or deception." Defs.' Mot. Dismiss ¶ 47, ECF No. 87. Allianz and Jefferson Insurance make similar arguments relying on Florida law that undercut nationwide class action treatment of Plaintiff's unjust enrichment claim. *Id.* ¶ 49.

the Court does not address any remaining motions.[5] The clerk of the court shall effect this transfer in accordance with the usual procedure.

       **SO ORDERED** on this **13th day** of **November, 2020.**

                                      Reed O'Connor

                               **UNITED STATES DISTRICT JUDGE**

---

[5] Pending are Defendants AGA Service Company and Jefferson Insurance Company's Motion to Dismiss Plaintiff's Amended Class Action Complaint (ECF No. 87), filed October 23, 2020, and Plaintiff's Motion for Class Certification (ECF No. 92), filed October 23, 2020.